**ALPINE CHRISTIAN FELLOWSHIP, a Colorado non-profit corporation and Church organized under the laws of the State of Colorado, Plaintiff,**

v.

**COUNTY COMMISSIONERS OF PITKIN COUNTY, The County of Pitkin, Colorado, Herschel Ross, in his official capacity as County Commissioner for Pitkin County, Jim True, in his official capacity as County Commissioner for Pitkin County, Collette Penne, in her official capacity as County Commissioner for**

Pitkin County, Wayne Ethridge, in his official capacity as County Commissioner for Pitkin County, Fred Crowley, in his official capacity as County Commissioner for Pitkin County, and Bill Tuite, in his official capacity as County Commissioner of Pitkin County, Defendants.

Civ. A. No. 91–M–675.

United States District Court, D. Colorado.

Sept. 6, 1994.

Robert E. Lees, Jeannette L. Nowling, Lees & Nowling, L.L.C., Denver, CO, Lynn M. Watwood, Jr. as representative of The Rutherford Inst., Denver, CO, for plaintiff.

Timothy E. Whitsitt, John M. Ely, Pitkin County Atty., Aspen, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

MATSCH, Chief Judge.

In this civil action, with jurisdiction provided by 28 U.S.C. §§ 1331 and 1343, the plaintiff seeks a declaratory judgment under 28 U.S.C. § 2201, *et seq.,* and a permanent injunction to prevent the defendants from taking any action to prevent or interfere with the plaintiff's conduct of a church school in the church building located in the Holland Hills Subdivision in an unincorporated area of Pitkin County, Colorado. The issues are defined in a stipulated pre-trial order entered by Magistrate Judge Bruce D. Pringle on April 30, 1993. Pitkin County has a Land Use Code. The plaintiff's zoning district is an agricultural and forestry district (AF–1) in which a church is recognized as a use by right. There are eight zoning districts in the county that allow churches by right, and in only two of those eight districts are private schools permitted as a use by right. Private schools are permitted in the plaintiff's zoning district only through the issuance of a Special Review of Use permit under Section 3–3 of the Land Use Code. Such uses are defined as "contingent uses" under Section 3–6.1 of the Code and the Board of County Commissioners, as the zoning authority, has discretion as to whether such a contingent use is appropriate in a particular location. Article 20–1 of the Code recognizes an accessory use as a use "customarily incidental to the principal building or use."

In the pre-trial order, the parties made the following stipulations:

1. The plaintiff is a church duly incorporated under the non-profit laws of the State of Colorado, consisting of members of the general public, whose Articles of Incorporation and Bylaws reflect that education of its youth, including religious instruction, is one of plaintiff's primary purposes.

2. That plaintiff's school was in operation on its premises in September, 1989, when it was advised by a Pitkin County Zoning Officer that the operation of the School was in noncompliance with Section 3–3 of the Code.

3. The church curriculum conforms to all requirements of the Department of Education, State of Colorado.

4. The church is located in a district (AF–1) which allows use by right for a church and accessory uses.

5. Plaintiff involuntarily and immediately closed its School, and in the Spring of 1990 submitted its application to the County Zoning authorities for approval of the operation of its School under the special review procedure contained in the Code, under protest.

6. Plaintiff's cover letter included with its application set forth that it was requesting a "waiver of requirement" to submit to the special review process and "that the county and state has no jurisdiction over religion and no authority to require a permit of this type." Moreover, the application contained the plaintiff's "Church Mission Statement."

7. Plaintiff submitted to the Special Review procedure under protest, responding to all requested information from the county departments having a review role in this procedure.

8. The culmination of this procedure was the denial of plaintiff's application for its proposed use at the full hearing of the defendant's BOCC, attended by representatives of plaintiff, on September 11, 1990.

9. That plaintiff proceeded with remodeling of its church to expand its sanctuary and to expand classroom space in this facility, receiving all the required Pitkin County department approvals for this construction when completed, including zoning, and the building requirements.

10. That the several county departments' approval included compliance with all requirements of their building codes for fire protection and safety, sanitation, and health.

11. The plaintiff received a Certificate of Occupancy without any restriction and that plaintiff may rely upon Certificate of Occupancy to the extent allowed by law, if any.

12. The A–3/E–1 group designation on the Certificate of Occupancy means permitted occupancy of the church sanctuary for 150 people, and occupancy of the classroom facilities for education purposes for 55 people.

13. That on or about April 8, 1991, plaintiff held one day of classes in its remodeled church facility, and defendants ordered plaintiff to cease and desist under threat of prosecution, penalty and court order.

14. Plaintiff closed its School operation in its church facilities and thereafter filed this suit against defendants for infringement of its First Amendment rights and for defendant's application of its Code in an *ultra vires* manner.

15. The sincerity of conviction of plaintiff in educating its children according to religious principles is not subject to question or dispute.

16. The building plans plaintiff utilized and constructed, complied with the Uniform Building Code, Uniform Mechanical Code, Uniform Plumbing Code and National Electric Codes.

17. The building is safe under the fire code and building code for the occupancies contemplated.

18. The building did not pose a fire risk to any persons on the premises.

19. The building was approved by the Zoning Department and Environmental Health Department for its intended occupancy based on the scope of plans presented.

20. The Zoning, Environmental and Building Departments of Pitkin County had signed off on plaintiff's remod-

eling of the existing structure for A–3/E–1 occupancy.

21. The issuance of the Certificate of Occupancy in this case occurred on March 27, 1991, six months after denial of use by the BOCC.

22. That plaintiff, through its School, provides its students with training not only in academics but also training in the religious precepts, teachings and clear understanding of scriptural principles through the ABEKA school curriculum used nationally in religious schools.

The plaintiff ("Church") has moved for summary judgment for declaratory and injunctive relief. The defendants, collectively referred to as the "County," have moved for summary judgment of dismissal of all of the plaintiff's claims.

■ The County's first contention is that the denial of the special review permit application was a quasi-judicial action for which the exclusive remedy is a writ of certiorari under Colo.R.Civ.P. 106(a)(4), citing *Snyder v. City of Lakewood,* 189 Colo. 421, 542 P.2d 371 (1975). That case is not applicable because this is not a rezoning action. It is a challenge to the constitutionality under the First and Fourteenth Amendments to the United States Constitution, raising a justiciable issue in this court under 42 U.S.C. § 1983. As was determined in *Messiah Baptist Church v. County of Jefferson, State of Colorado,* 859 F.2d 820 (10th Cir.1988), the state procedural remedy is not exclusive. The doctrine of collateral estoppel has no application here for the same reasons. Indeed, the County Commissioners had no occasion or power to decide the constitutional issues which are now before this court.

■ The core question in this case is whether the County has prohibited the free exercise of religion by the members of the Church contrary to the prohibition of the First Amendment to the United States Constitution. The County attempts to avoid the free exercise clause by contending that the denial of the special use permit was a rejection of a contingent use for a private school in this residential neighborhood without re-

gard for the religious affiliation. Accordingly, it is argued that the case should be viewed as a school purposes rather than religious purposes case. The argument is not persuasive. It has been agreed that religious education is an integral part of the religious beliefs of the church's membership.

The question here is whether the County has impermissibly burdened the religious activities of the Church by prohibiting the use of the church building for daily religious education by the use of a zoning code which restricts the location of secular private schools. This case differs from *Messiah Baptist Church* because the issue here is not the construction of a building to be used by a church; it is a restriction on the activities taking place within a church building legitimately placed in a residential neighborhood. Accordingly, the appropriate analysis is that suggested by *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). The first question under Sherbert is whether the County has placed a burden on conduct which is motivated by a sincerely held religious belief. The answer to that question is yes. That is true even if the appropriate standard is a "substantial" burden as suggested in the discussion in the majority opinion deciding *Employment Division, Department of Human Resources of Oregon v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). Given the importance of religious education to the members of the Church, the importance of conducting the school within the church building is self evident.

To justify imposing such a burden on religion, the County must show some "compelling state interest." Because this is an individualized question, the state interests which justify zoning codes in general are not applicable. The more narrow focus here is whether the reasons given for denial of this special permit application can be characterized as compelling governmental interests. A public hearing was held on September 11, 1990. Opposition to the application came from residents in the neighborhood who were concerned about noise and traffic congestion. The formal denial of the application was in the form of Resolution Number 90–137, appearing as Exhibit 15 to the plaintiff's motion for summary judgment. The pertinent part of that resolution provides as follows:

... the proposed use is incompatible with existing adjacent residential uses; the applicant has failed to demonstrate adequate mitigation of adverse impacts, including noise impacts on the neighborhood generated by a forty pupil school; and the Applicant has not demonstrated that a water supply of adequate quantity, pressure and dependability is available to support the proposed school use and provide protection from fire; and

WHEREAS, the Board further finds that the proposed use is not compatible with the adopted Down Valley Comprehensive Plan and the intent of the AF–1 zone district.

The County did not expand on these findings of noise impacts, insufficiency of the water supply and incompatibility with the Down Valley Comprehensive Plan. The validity of the stated reasons is undermined by the issuance of the Certificate of Occupancy six months later. Certainly, the approval of the expanded use under the fire regulations contradicts the suggestion that the water supply is inadequate. Moreover, the defendants concede that if the Church desired to conduct religious services every day of the week, the Church could do so. What is shown by the record is that the county commissioners were influenced by the negative reaction of the residents in the neighborhood. That, of course, does not constitute a compelling governmental interest. Because the County has failed to meet its burden of justifying this restriction, the other questions in the *Sherbert* analysis need not be addressed.

Even if the *Messiah Baptist Church* analysis is used in this case, the plaintiff prevails. The conduct of a school within the church building is integrally related to the religious belief of the church membership. The plaintiff is not arguing for a right to be free from zoning or to build a church where it pleases. It purchased an existing church building in a district where a church is a use by right. The restriction now is on religious conduct. It is the same case as that which would be presented if the plaintiff sought to construct

a new church building as a use by right but the County imposed some restrictions on what activities could take place in that building. That would infringe on the free exercise clause. The same justification sought to be used for the denial of the special use permit would not warrant a denial of a new building permit, particularly where, as here, all of the safety and other legitimate government interests have been satisfied. The restriction on the educational use of the building is not different, in principle, from a governmental imposed restriction on the religious ceremonial practices in the church.

In sum, on the stipulated facts, and under established law, the denial of the plaintiff's special use application for the operation of a school within the Church building is a substantial burden on the free exercise of religion by the membership of the Church and is prohibited by the First and Fourteenth Amendments to the United States Constitution. Accordingly, this court must grant the plaintiff's claims for relief in the form of a declaratory judgment to that effect and a permanent injunction restraining the county from enforcing the special use requirement of its Land Use Code to preclude this school use of the Church building.

This conclusion makes it unnecessary to consider the plaintiff's separate claim that the defendants have infringed rights protected under the Colorado Constitution. The principal issues have been resolved on these cross motions for summary judgment. In addition to the declaratory and injunctive relief, the plaintiff is entitled to statutory costs and to attorney's fees and costs under 42 U.S.C. § 1988. The plaintiff has also sought relief by compensatory damages. These issues require further proceedings.

Upon the foregoing, it is now

ORDERED that the defendants' motion for summary judgment is denied and the plaintiff's motion for summary judgment for declaratory and injunctive relief is granted. The plaintiff shall have to and including September 30, 1994, within which to file its application for attorney's fees and costs and a statement with respect to the particular damage relief sought. The defendants shall have to and including October 14, 1994, within which to respond to the plaintiff's claims for fees and costs. The parties shall also indicate in these papers their respective views concerning the entry of judgment on the declaratory and equitable relief with costs and fees under Fed.R.Civ.P. 54(b).